MONTALVO, PLAINTIFF AND APPELLEE, *v.* MONTALVO ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action
of Filiation.

No. 1547.—Decided November 23, 1917.

FILIATION—NATURAL CHILD—BIRTH CERTIFICATE—EVIDENCE.—It is not prejudicial
error in an action for the acknowledgment of a natural child to admit a cer-
tificate of very little or no probative force in itself in order to show the date
of the plaintiff's birth when there is other evidence more than sufficient to
establish that fact.

ID.—COMPLAINT.—AMENDMENT.—It is not too late for the plaintiff to amend his
complaint at the trial by inserting the words, ''and he is in the continuous
possession of the status of a natural child,'' and for the court to allow him
to introduce additional proof in support of his amendment when he has not
rested his case.

ID.—ID.—AMENDMENT AFTER DEMURRER—NONSUIT.—After the plaintiff had rested
his case the defendants demurred to the complaint on the ground that it did
not state facts sufficient to constitute a cause of action, in that it failed to
allege that the mother and putative father of the plaintiff could have mar-
ried with or without dispensation at the time the child was conceived, and at
the same time moved for a nonsuit for lack of evidence on this point. The
plaintiff then moved for leave to amend his complaint and to introduce further
evidence, which motion the court granted and simultaneously overruled the
defendant's demurrer and motion for nonsuit. *Held:* That although it would
have been more logical first to sustain the demurrer and then sustain the
plaintiff's motion, there is no rule that requires the trial court to pass upon
the motion for nonsuit before considering the matter of amendment, and that
the amendment having been allowed with leave to introduce further evidence,
the sufficiency of the facts previously established became a mere academic
question.

ID.—ID.—ID.—DISCRETION OF COURT.—Trial courts have broad discretion in mat-
ters of amendments to the complaint during the trial and the admission of fur-
ther evidence in support of the same. This discretion should be liberally exer-
cised in the interest of justice, and when so exercised without prejudice to
any substantial right of the parties, technical questions of procedure will re-
ceive scant consideration on appeal.

ID.—ACKNOWLEDGMENT—MINOR—DISPENSATION.—A minor may acknowledge a
natural child and the dispensation mentioned in section 119 of the Civil Code
is not necessarily the technical legal dispensation of the canonical law or of
the Civil Code.

ID.—DISPENSATION—NATURAL CHILD.—In the event of the formal authorization
referred to in paragraph 3 of article 45 of the Spanish Civil Code, in which
the parent of a person subject to guardianship relieves such person of the
incapacity to marry by authorizing such marriage in a will or in a public in-
strument, not only is a child conceived out of wedlock within the code defini-
tion of a natural child, but even otherwise, given the possibility of such ''dis-

pensation,'' the same should be presumed and the language of the code construed to include all those whose legal disability might have been so removed.
ID.—POSSESSION OF STATUS—NATURAL CHILD.—The possession of the status referred to in the Civil Code is the public reputation which a child bears with reference to its natural father, where this reputation is formed by direct acts of the father himself or his family demonstrative of a true acknowledgment, perfectly voluntary, free and spontaneous, inasmuch as the code does not authorize the investigation of paternity, nor does it impose, therefore, such acknowledgment against the father's will, although aside from this it is not necessary that said acknowledgment be so ostentatiously made as if the child were a legitimate one, having in mind the ideas and considerations that might exist in social relations; it being, therefore, the province of the courts within this rule merely to appreciate in each case the nature, import and extent of the acts of acknowledgment ascribed to the natural father or to his family.

The facts are stated in the opinion.

*Messrs. Angel Arroyo Rivera* and *Benjamin J. Horton* for the appellants.

*Mr. José Benet* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

''Not slower than majesty moves, for a mean and a measure
Of motion—not faster than dateless Olympian leisure
Might pace with unblown ample garments from pleasure to pleasure,''

was the progress of this suit in the court below, albeit the trial proceedings at times limp a trifle more than the lines quoted would indicate. Indeed, but for the timely and helpful suggestions of attorneys for defendants, pointing out fatal defects in the pleadings and shortcomings in the evidence, supplemented by the benevolent attitude of a patient trial judge, the outcome might have been most disastrous for plaintiff. We call attention to this, not so much in a spirit of criticism as because of the striking illustration thus afforded both of the risk that may be avoided by plaintiff and the amount of time and labor that may be saved to all parties concerned, including the courts, through the proper preparation of a meritorious case before going to trial.

Plaintiff introduced his evidence on January 25, the trial was adjourned to February 4, and by stipulation again postponed to February 9. On the day last mentioned, de-

fendants demurred for want of a cause of action and moved for a nonsuit, and the court after argument took the matter under advisement until February 15. On the 11th the parties were heard as to whether or not the plaintiff might be allowed to amend after having closed his case, and opinion was also reserved on this point. On February 28 plaintiff filed a motion in writing for leave to amend, accompanied by a copy of the proposed first amended complaint. On March 21 a further hearing was ordered for March 24, on which date the court overruled the demurrer and the motion for nonsuit, admitted the amended complaint and granted plaintiff leave to adduce further evidence pursuant to such amendment. The question that perplexed the trial judge was not as to the propriety of allowing an amendment to conform to the evidence, but rather as to whether, in the exercise of a sound discretion, a plaintiff who had closed his case without having either stated in his complaint or established at the trial facts sufficient to constitute a cause of action might be permitted to amend his complaint, setting up the essential elements omitted in the original pleading with a view to the introduction of evidence in support of such new allegations.

Defendants then asked and were granted ten days within which to amend their answer. The amended answer was filed March 31.

Again the case came on for trial on May 4 and thereupon a new demurrer was filed on the ground that the amended complaint did not state a cause of action. The court after argument sustained the demurrer and again granted plaintiff leave to amend, gave defendant time to answer and fixed May 9 for the next attempt at a trial.

On May 5 the second amended complaint was filed and the court thereupon extended the time to answer to May 12, for which day the case was likewise reset.

The trial was finally concluded on May 16 and judgment was rendered on August 28, 1916, adjudging plaintiff-ap-

pellee to be the natural son of Juan José Emiliano Montalvo y Bermúdez, together with the usual pronouncements in cases of this kind.

Error is assigned as follows:

"1st. The court erred in admitting the certificate of birth of Emilio Gonce, executed on January 28, 1916, in which it was stated that he was born on May 6, 1893.

"2nd. The court erred in admitting the amendment prayed by the plaintiff in order to amend the IV paragraph of the petition so as to insert 'and he is in the continuous possession of the status of a natural child.'

"3rd. The court erred in admitting in evidence the baptismal certificate of one Emilio, son of Agripina González.

"4th. The court erred in overruling the defendant's first motion for nonsuit and general demurrer.

"5th. The court erred in sustaining the plaintiff's motion asking for leave to amend his petition and admitting the evidence offered by the plaintiff in this regard.

"6th. The court erred in holding that Emilio Montalvo Bermúdez could have married Agripina Gonce in 1892 or 1893 without authorization or advice from their parents.

"7th. The court erred in holding that Agripina Gonce could have married from 1892 to 1893, she being at that time but 18 years old.

"8th. The court erred in overruling the defendant's last motion for nonsuit and general demurrer.

"9th. The court erred in adjudging plaintiff to be the natural acknowledged child of Emilio Montalvo Bermúdez based upon evidence not sufficient to sustain the judgment.

"10th. The court committed a manifest error in weighing the evidence."

We are inclined to agree with appellant that the court erred in admitting the birth certificate; but this document— of little or no probative force in itself, even if admissible— was a negligible item as compared with the oral testimony and other evidence, which was more than sufficient to establish, approximately at least, the date of birth. The error, if any, was harmless.

Appellant in the second assignment suggests that the

amendment quoted merely states a conclusion of law and that in any event the motion to amend came too late. No question seems to have been raised below as to the phraseology now complained of. Plaintiff had not rested at the time the amendment was proposed, as in the case of the fifth assignment, and no serious effort is made to show, nor do we perceive, why the motion came too late.

Appellant, in discussing the third alleged error, assumes that the documentary evidence of baptism was a certificate issued by the priest, which appellee insists is a mistaken hypothesis, due, it is suggested, to the fact that counsel on appeal did not participate at the trial. Appellee says that the priest was called and produced the original records, the entry as to the baptism of plaintiff being offered and admitted to prove, not the date of birth but the fact of baptism by a certain priest in the presence of the god-parents in order to corroborate the testimony of certain witnesses who had testified with reference to these matters.

Upon this point the record recites merely:

"The plaintiff offered in evidence the baptismal certificate (*la partida de bautismo*) and to the admission of said document defendants objected, alleging that in a filiation suit it was not admissible in evidence, and upon the ground that while the document appeared with an internal-revenue stamp affixed, the signature subscribed thereon was not duly authenticated, and that the court could not take judicial notice of the signature of a priest, and upon the further ground that according to said document the child baptized appeared to be the son of a certain Agripina González and the evidence had shown that the plaintiff was the son of Agripina Gonce. The court admitted the document, expressing the opinion that the church registry was an official registry before the civil registry, but after the establishment of the civil registry the church registry is merely a private registry. Its acts may be proved by bringing the books into court, but not by means of certificates. Before the civil registry existed the church books were the true civil registry, but afterwards such evidence of the civil status of a person ceased to be admissible; and if the fact of baptism is desired to be proved, the books of the church registry may be brought in by the person

in charge of them, under whose custody they are. The defendants took an exception.''

In this we find no serious error. *Iturrino* v. *Iturrino*, 24 P. R. R. 439; *Delannoy* v. *Blondet*, 22 P. R. R. 219; *Figueroa* v. *Díaz*, 19 P. R. R. 683.

The fourth assignment refers to an incident already mentioned. After plaintiff had rested his case defendants demurred for failure to allege facts sufficient to constitute a cause of action, in that the complaint did not show that the mother and putative father of plaintiff at the time of conception "could have married with or without dispensation;" and at the same time moved for a nonsuit for want of proof in this regard. Plaintiff at once moved orally for leave to amend and to introduce further evidence, which request was later followed by the motion in writing accompanied by a copy of the proposed amended complaint, as hereinabove set forth. Apparently neither plaintiff nor the court ever had any doubt as to the technical legal merits of the question so raised by defendants although the trial judge seriously doubted whether in the circumstances he had power to allow the proposed amendment. Although the court in granting the motion of plaintiff simultaneously overruled the demurrer and the motion for nonsuit, the opinion on which its order is based deals exclusively with the question of the proposed amendment and reopening of the case, which plainly appears to have been the only point to which the mind of the trial judge was seriously directed. No doubt it would have been more logical first to sustain the demurrer and then grant plaintiff's motion. Indeed, the inadvertent character of the ruling made is further indicated by the circumstance that at a subsequent session the same demurrer was interposed and sustained, the court of its own motion immediately thereafter granting plaintiff leave to amend, to which ruling defendants likewise excepted and then asked and obtained leave and time to answer. We are aware of no rule that would oblige the trial court to pass upon the

motion for nonsuit before considering the matter of amendment, and the amendment having been allowed with leave to introduce further evidence, the sufficiency of the facts previously established became a mere academic question.

Enough has been said to show that the amendment referred to in the fifth assignment did not set up an entirely new cause of action, but merely supplied the omission, apparently through oversight, of an essential minor element of plaintiff's case. Trial courts have broad discretion in matters of this kind, which should be liberally exercised in the interest of justice, and when so exercised without prejudice to any substantial right, technical questions of procedure will receive scant consideration on appeal. While the imposing of reasonable terms and conditions in most cases would be conducive to greater care in pleading and in the presentation of evidence, and while counsel for plaintiff herein hardly could have complained if the course suggested had been adopted below, we find no fault in the action of the trial judge in permitting the complaint to be amended and the trial to proceed. Any other course would have resulted in unnecessary delay, inconvenience and expense, if not in an ultimate miscarriage of justice.

Article 119 of the Civil Code in force in Porto Rico at the time of plaintiff's birth defines natural children as—

"Those born out of wedlock of parents who, at the time of the conception of the child, could have married with or without dispensation."

A minor may acknowledge a natural child. 1 Manresa (3rd edition), 564.

The dispensation mentioned in the article just quoted is not necessarily the technical legal dispensation of the canonical law or of the Civil Code. By the terms of article 45, relied upon by appellants—

"Marriage is forbidden—

"1. To a minor who has not obtained permission, and to a person of age who has not registered the advice of the persons whose

right it is to authorize one or the other in the cases provided for by law.

\*     \*     \*     \*     \*     \*     \*

"3. To the guardian and his descendants with the person whom he may have had under charge, until the guardianship has terminated and the accounts of his administration have been approved, except in case the father of the person subject to guardianship has authorized the marriage in a will or in a public instrument."

The impediment between guardian and ward is not susceptible of legal dispensation. Only the parent of the ward could relieve the parties of this disability, authorizing the marriage "in a will or in a public instrument." Yet Manresa maintains that not only in the event of this formal authorization is a child conceived out of wedlock within the code definition of a natural child, but even otherwise, given the possibility of such "dispensation," the same should be presumed and the language of the code be construed to include all those whose legal disability might have been so removed. Commentaries, Vol. 1, page 535. If this proposition be sound it disposes conclusively of the contention made under the sixth and seventh assignments.

The argument under the eighth and ninth assignments goes entirely to the sufficiency of the evidence.

The final amended complaint alleged, among other things—

1. That from the middle part of the year 1891 up to the latter part of the year 1895 the mother of plaintiff, Agripina Gonce, having been courted by and under a promise of matrimony from Juan José Emiliano Montalvo y Bermúdez, lived uninterruptedly under the same roof with him as his concubine, he having been a resident of Mayagüez, generally known as Emilio Montalvo, both being unmarried, not related by consanguinity or affinity, having had as a result of such union a son, plaintiff herein, who was born at Mayagüez, Porto Rico, on May 6, 1893; and both his mother, Agripina Gonce, and his said natural father, Juan José Emiliano Montalvo y Bermúdez, at the time of the conception of

plaintiff, about the month of August, 1892, and moreover, before and after said date, were both in a position to marry without dispensation.

2. That the said Juan José Emiliano Montalvo Bermúdez, known as Emilio Montalvo, authorized plaintiff herein to use his own name, duly assisted plaintiff as a father, provided for his necessities from the moment of his birth, paid for his education and both privately and publicly held him out as his son, and always offered to acknowledge him as such and always offered to carry out his purpose, attending to the maintenance and education of plaintiff up to the time of his death.

4. That the plaintiff always conducted himself, both publicly and privately, as the son of the said Emilio Montalvo, deceased, always used his name publicly and privately and is in the continuous possession of the status of a natural child of his said father, and has a real interest in proving his filiation through the means provided by law.

While the proof as to these matters is not so conclusive as could be desired, yet, if the court believed the witnesses for the plaintiff—as evidently it did—there is enough to sustain the judgment. The testimony of Agripina Gonce appears to have been extremely frank, has other earmarks of truth, is corroborated in its essential details and covers the entire case.

The contention under the tenth assignment is summed up in the proposition that the court below confused the question of status, dependent upon the *purpose* of a parent to confer the same upon his offspring, with that of *paternity,* the investigation of which was prohibited by the Spanish Code.

The Supreme Court of Spain, in its decision of June 26, 1903, 95 *Jurisprudencia Civil,* No. 194, page 1021, has announced as a general rule, to quote the syllabus:

"That the possession of the status referred to in section 135, subdivision 2, of the Civil Code, is the public reputation which a child bears with reference to his natural father, where this reputa-

tion is formed by direct acts of the father himself or his family, demonstrative of a true acknowledgment, perfectly voluntary, free and spontaneous, inasmuch as the code does not authorize the investigation of paternity except as provided in the Penal Code, nor does it impose, therefore, such acknowledgment against the father's will, although aside from this it is not necessary said acknowledgment be so ostentatiously made as if the child were a legitimate one, having in mind the ideas and considerations that might exist in social relations; it being, therefore, the province of the courts within this rule merely to appreciate in each case the nature, import and extent of the acts of acknowledgment ascribed to the natural father or to his family.

"That the circumstances in each case must determine the extent and import of the acts indicative of the continuous possession of the status of a natural child."

A careful consideration of the whole record, in the light of the language quoted, discloses no reversible error.

The judgment appealed from must be

*Affirmed.*

Justices Wolf and del Toro concurred.
Chief Justice Hernández and Justice Aldrey absent.